IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARK BOWLING                                                                    PLAINTIFF

V.                                              4:19CV00909 JM

FEDERAL BUREAU OF INVESTIGATON;
UNITED STATES ATTORNEY GENERAL
WILLIAM BARR; DEPARTMENT OF JUSTICE                             DEFENDANTS

## ORDER

Plaintiff Mark Bowling, a former employee with the FBI, filed his *pro se* complaint on December 18, 2019 alleging he experienced workplace discrimination because of his Evangelical Christian faith. (Doc. 1). Defendants moved to dismiss. (Doc. 5). Bowling both responded and timely amended his complaint. (Doc. 9 & 11); FED. R. CIV. P. 15(a)(1)(B). "It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). As a result, Defendants' first motion to dismiss (Doc. 5) is DENIED, as MOOT.

In his amended complaint, Bowling alleges that, in the course of his employment with the FBI, he suffered religious discrimination in violation of both Title VII, 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1981. (Doc. 11). He also alleges he suffered a number of common law torts and constitutional violations[1] under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671-2680. (*Id.*). He seeks relief under Title VII, the FTCA, the Civil Service Reform Act ("CSRA")[2], the

---

[1] As enumerated by Bowling, he alleges the following Claims under the FTCA:  intentional infliction of emotional distress (Count 4); invasion of privacy/intrusion (Count 5); violations of privacy guaranteed under the fourth amendment (Count 6); violation of due process guaranteed under the fifth amendment (Count 7); violation of the Electronic Communication Privacy Act (Count 8); false statement (Count 9); falsifying a document (Count 10); concealing evidence (Count 11); wrongful acts (Count 12); and concealing a document (Count 13).

[2] Pub. L. No. 95-454 (codified at scattered sections of Title 5 of the United States Code).

Whistleblower Protection Act ("WPA"), 5 U.S.C. §2302(b)(8), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §215(a)(3). (*Id*.). Defendants move to dismiss the amended complaint. (Doc. 14). Bowling has responded (Doc. 18), and Defendants have replied (Doc. 24). The motion is ripe for decision.

## I.   Introduction

### A.  Background

Bowling began work as a special agent with the FBI on July 23, 1995. (Doc. 11 at 3). Bowling states that he worked in Little Rock "as the National Security Branch Assistant Special Agent in Charge ("ASAC") until July 27, 2012, when he was forced . . . to join the Intelligence Program." (*Id*. at 3). Bowling alleges his supervisor at the time, Deputy Assistant Director Randall Coleman, orchestrated the position change in retaliation for Bowling's questioning the legitimacy of one of his directives. (*Id*. at 3-5). When Bowling asked that he put the request in writing, Coleman allegedly "ceased to discuss the matter." (*Id*. at 5).

Bowling asserts that in May 2012 Coleman pressured him to drop out of the FBI funded graduate school program in order to better "focus on Coleman's priorities. (Doc. 11 at 10). Then, in June 2012, Coleman purportedly demanded that Bowling cancel his scheduled summer vacation "in order to attend matters at the Little Rock Office." (*Id*. at 11). Bowling states that it is well known that parents of high-school athletes have a finite period in the summer free from practice to travel with their children. Bowling opines that Coleman's directive to cancel his summer plans was motivated by his discriminatory bias towards Christians who prioritize family. (*Id*. at 11-12).

Bowling next alleges that on July 20, 2012, Coleman made statements to him that were "discriminatory against [Bowling's] religious conviction to be a dedicated father and his parental status." (Doc. 11 at 5). Coleman allegedly questioned Bowling's ability both to be a readily

available and present father while also being Coleman's ASAC. (*Id.*) Bowling remembers

Coleman threatening to place him on a performance improvement plan so that he could "find a

way to fire [him]" or at the very least have him transferred. (*Id.* at 6).

Bowling further alleges ASAC David Shepard had a known animus toward Evangelical

Christians. In support of this assertion, Bowling recounts several comments privately made by

Shepard to Bowling about coworkers that Bowling perceived as either racist or sexist. (Doc. 11

at 7- 9). For example, Shepard made reference to female agents as "the girls" and opined that an

African-American agent's "socio-economic background" made him unsuitable to be an agent.

(*Id.*). While none of the comments or actions attributed to Shepard appear to have been directed

at Bowling, he asserts that Shepard's and Coleman's collective negative attitude toward

Christians resulted in him suffering "negative employment treatment." (*Id.* at 10).

According to Bowling, Coleman forced him out of FBI management when Coleman

threatened to have Bowling transferred unless Bowling agreed to leave his ASAC post. (Doc. 11

at 12). Bowling says, on July 23, 2012, he "conceded to the threats" and agreed to be reassigned

as a Technically Trained Agent. (*Id.*). Coleman purportedly warned Bowling, "You need to save

face here, and if I hear that you have told anyone that I forced you out as the ASAC[,] I will

transfer you to New York." (*Id.*).

As evidence of discriminatory religious bias underlying the reassignment, Bowling points

to the fact that he was replaced by an unmarried, childless female agent, who, as a result, "was

not bound by a religious belief to be a committed and devoted parent." (Doc. 11 at 12, 22). He

further points to Coleman's insistence that Bowling receive a low interim performance appraisal

report ("PAR"). (*Id.* at 12). Bowling contends that Coleman orchestrated Bowling's 2012 interim

PAR score being lowered from Excellent (4.38) to Successful (3.38) in order to create a record

"in the event that [he] sought legal action challenging the discriminatory actions of which he was the subject." (Doc. 11 at 13-14).

Bowling states that on March 13, 2013, Shepard vindictively initiated an internal investigation of him, which Coleman approved. (Doc. 11 at 15). Shepard's complaint began a two-year investigation. As a result of that investigation, Bowling contends that his personal email (which he admittedly accessed through his work computer) was searched without a warrant; a myriad of documents containing false information about him was created; and that information was negligently used by a number of employees in progressing the discriminatory investigation. (Doc. 11 at 15-21). In sum, Bowling maintains the DOJ failed to provide oversight over the investigation and, as a result, negligently allowed investigators to use false and manipulated evidence in the process. (*Id*.) Bowling concludes by stating that "the continued pattern of discriminatory treatment, intentional infliction of emotional distress[,] and verbal and emotional abuse left [him] with no choice but to resign . . . and accept a position with lower rank and lower pay . . .." (Doc. 11 at 15). Bowling believes that he, in effect, was constructively terminated.

At some point, Bowling filed a complaint with the Equal Employment Opportunity Commission. He attaches to his amended complaint the EEOC's May 10, 2018 denial of his claim as well as the right to sue letter. (Doc. 11 at 31). The EEOC considered whether Bowling was discriminated against for his Evangelical faith when, on September 10, 2014, he was notified of a 35-day suspension. (*Id*. at 32). In its opinion, the ALJ determined that Bowling's suspension was supported by "legitimate and nondiscriminatory reasons[.]" (*Id*. at 34). Apparently, Bowling was suspended following the discovery of an undisclosed freelance working relationship he had in violation of internal-FBI policy. (*Id*.). The ALJ rejected Bowling's assertion that his suspension was motivated by religious discrimination finding

instead that "[a]ll the proof points to the fact that the Agency suspended Complainant due the [outside employment] policy violations . . ." (*Id.* ). In sum, the Judge held, "Complainant simply has not met this burden to show that religion was a factor in any of the decisions made by the Agency, or that religion was the true reasons for his suspension . . ." (*Id.*).

Bowling also attached his September 5, 2015, letter to the Federal Tort Claims Branch of the Justice Department notifying it of his intention to exhaust his administrative remedies. (Doc. 11 at 38). Receipt of that claim was documented in a September 15, 2015, return letter. (*Id.* at 40). The resolution of the tort claim is unknown.

**B.    Federal Claims**

In his amended complaint, Bowling asserts 13 counts for relief. In Count 1, Bowling argues he suffered religious discrimination in violation of Title VII of the Civil Rights Act that resulted in his having to endure a hostile work environment, a demotion, and eventually constructive termination. Essentially, Bowling argues he was harmed by the FBI's "systematic discrimination" against Evangelical Christian men who are active parents. (Doc. 11 at 21-22).

He next claims his rights under the Civil Service Reform Act of 1978, which protects parental status, were violated when he was forced to choose between "being a committed father" or continuing on as an ASAC. (Doc. 11 at 23). He contends he was treated disparately from his co-workers as evidenced by his being replaced by a childless employee. (*Id.*).

In Count 3, Bowling claims violations of both the Whistleblower Protection Act and the Fair Labor Standards Act occurred as a result of his being punished by Coleman after Bowling pushed back about the legality of one of his directives. (Doc. 11 at 23-24). Finally, in Counts 4–13, Bowling seeks relief under the Federal Tort Claims Act for infliction of emotional distress, invasion of privacy, violations of his Fourth and Fifth Amendment rights, violation of the

Electronic Communication Act, and five violations of criminal statutes. (Doc. 11 at 24-27). Bowling seeks declaratory and injunctive relief as well as monetary damages. (Doc. 11 at 28-29).

Defendants have moved to dismiss arguing that this Court lacks subject matter jurisdiction and alternatively contending that Bowling has failed to state a claim upon which relief can be granted. Specifically, Defendants contend that Title VII provides the exclusive remedy for allegations of discrimination in federal employment. As a result, Defendants argue that all but the Title VII claims should be dismissed as a matter of law. Additionally, Defendants argue that Bowling failed to exhaust his administrative remedies for relief under Title VII; therefore, this Court should also dismiss that claim. (Doc. 14).

## II.     Standard

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When reviewing a 12(b)(1) motion, the court must determine whether the motion is "facial" or "factual." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction.'" *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)). By contrast, a factual attack is just that – a challenge to the underlying facts that would otherwise invoke federal jurisdiction. *Id.*

In contrast, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge

6

that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Here, Defendants facially attack Bowling's claims arguing that Title VII preempts the other causes of action. And, because Bowling failed to exhaust his EEOC claims, his Title VII claims should be dismissed for failing to state a claim upon which relief can be granted.

## III.   Analysis

Bowling's claims fail for a number of reasons. Without touching on the merits of his claims, as will be explained below, this Court lacks jurisdiction to hear most of them.

Defendants correctly argue that Title VII provides the exclusive remedy for federal employees to seek redress for workplace discrimination. *Brown v. General Serv. Admin.*, 425 U.S. 820, 835 (1976); *Harrell v. Donahue*, 638 F.3d 975, 983 (8th Cir. 2011) (noting that the Court has rejected "attempts by federal employees to seek remedies outside Title VII for claims of employment discrimination."); *see, e.g.*, *Mathis v. Henderson*, 243 F.3d 446, 449 (8th Cir. 2001) (FTCA claims preempted by Title VII); *Gergick v. Austin*, 997 F.2d 1237, 1239 (8th Cir. 1993) (refusing to allow a federal employee to "supplement ... his retaliation claim under Title VII" with a claim for emotional distress under the Federal Tort Claims Act). Defendants contend, and the Court agrees, that Bowling's recitation of facts supporting his claims all sound from his belief that he was discriminated against by Defendants because of his religion. The Eighth Circuit has held that, "[w]hen the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim." *Mathis v. Henderson*, 243 F.3d 446, 451 (8th Cir. 2001) (citation omitted).

Accordingly, Bowling's attempts to shoehorn what is basically a religious discrimination claim as arising under § 1981, the CSRA, the WPA, the FLSA, and the FTCA fail. Those claims are dismissed.

Additionally, while most federal employees can bring their whistleblowing claims under the CSRA, that Act specifically excludes FBI employees from coverage. 5 U.S.C. § 2302(a)(2)(C)(ii)(I); *Parkinson v. Dept. of Justice*, 874 F.3d 710, 713 (Fed. Cir. 2017). Instead, Congress created an entire internal mechanism by which FBI employees must bring WPA claims. 5 U.S.C. § 2303; *Parkinson*, 874 F.3d at 714-715; *Runkle v. Gonzales*, 391 F.Supp.2d 210, 231-233 (D.C. Cir. 2005) (outlining the Congressional intent behind and method of relief for FBI employees). In doing so, Congress "specifically rejected the suggestion of judicial review of decisions made under the implementing regulations . . . and [as a result] Congress has therefore not waived sovereign immunity for this purpose." *Runkle v. Gonzales*, 391 F.Supp.2d 210 (D.C. Cir. 2005) (internal citations omitted). Whether Bowling pursued internal review of a WPA claim is unclear but irrelevant because this Court lacks the power to review the claim in any event.

Based on the above, Bowling's § 1981, CSRA, FTCA, WPA, and FLSA claims are preempted by Title VII and must be dismissed as facially barred by Fᴇᴅ. R. Cɪᴠ. P. 12(b)(1).

With only his Title VII claim left, Defendants argue that Bowling's religious discrimination claims based on his alleged constructive termination, demotion, performance appraisal, and cancelled summer leave in 2012 must be dismissed because he failed to administratively exhaust these claims. They are correct.

Federal employees must contact an EEO counselor within forty-five days of an unlawful discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). A hostile work environment is viewed as a single unlawful practice; therefore, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011) (citations omitted). Failure to exhaust administrative remedies, including the failure to timely contact an EEO counselor, absent

8

equitable tolling, will bar a plaintiff from pursuing a judicial remedy. *Kirklin v. Joshen Paper &
Packaging of Arkansas Co.*, 911 F.3d 530, 534 (8th Cir. 2018). In *Fort Bend County, TX v.
Davis*, 139 S. Ct. 1843, 1849 (2019), the Supreme Court addressed Title VII exhaustion and
found that it is subject to forfeiture or waiver if not timely raised. In short, *Fort Bend* stands for
the proposition that even a non-jurisdictional mandatory claim processing rule must be enforced
"if a party 'properly raises it.'" *Id*. Here, Defendants properly raised the exhaustion argument.

Defendants argue, and the Court again agrees, that the EEOC addressed one issue –
"whether [Bowling] was discriminated against based on his religion [] when on or about
September 10, 2014, he was notified he was suspended from duty, without pay, for 35 calendar
days." (Doc. 11 at 32). The EEOC did not consider nor make a determination as to whether
Bowling was subject to a hostile work environment or substantiate his alleged discrete-religious-
discrimination claims arising in summer and fall 2012. Because Bowling did not present those
claims to the EEOC, those claims are time barred.

IV.    **Conclusion**

Defendants' motion to dismiss (Doc. 14) is GRANTED. Bowling's amended complaint is
DISMISSED without prejudice.

IT IS SO ORDERED this 2nd day of December, 2020.

_____
UNITED STATES DISTRICT JUDGE